## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| BRANDON R. CANOY, | CV 22-66-GF-JTJ |
| Plaintiff, | |
| vs. | **MEMORANDUM AND ORDER** |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, | |
| Defendant. | |

### INTRODUCTION

Plaintiff Brandon R. Canoy (Canoy) brought this action to obtain judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner), terminating his disability benefits as of October 18, 2018.

### JURISDICTION

The Court has jurisdiction over this action under 42 U.S.C. § 405(g). Venue is proper given that Canoy resides in Great Falls, Montana.  29 U.S.C. § 1391(e)(1); L.R. 1.2(c)(3).  The parties have consented to have the undersigned conduct all proceedings in this matter and enter judgment. (Doc. 7).

## BACKGROUND

Canoy filed for disability benefits in 2005 when he was 20 years old. (Doc. 11 at 399-403).  An ALJ determined that Canoy was entitled to disability benefits on July 1, 2005.  (Doc. 11 at 102, 255).  The Social Security Administration (Agency) conducted a continuing disability review on June 6, 2014.  (Doc. 11 at 102).[1]  The Agency determined that Canoy continued to possess a disability in 2014.  *Id.*  The ALJ determined that Canoy had the following medically determinable impairments: bipolar disorder; attention deficit hyperactivity disorder (ADHD); anxiety; sleep disorder; trouble learning new information, skills and time management; and depressive episodes.  (Doc. 11 at 104).  The ALJ further determined that these impairments satisfied listing 12.04C of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR § 404.1520(d)).  (Doc. 11 at 104).  The ALJ's determination in June 2014 is referred to as the "comparison point decision" (CPD), given that it is the most recent decision where Canoy was found to be disabled.  (Doc. 11 at 104).

The Agency reviewed Canoy's status again on October 18, 2018.  The Agency determined that Canoy's mental health had improved and that Canoy was

---

[1] Following a determination that a person is disabled, the Commissioner must evaluate the claimant's impairments "from time to time to determine if [the claimant is] still eligible for disability . . . benefits."  20 C.F.R. §§ 404.1589, 416.989.  This evaluation is referred to as a "continuing disability review."  *Id.*

2

no longer disabled.  (Doc. 11 at 102, 280).

      Canoy requested that an ALJ review the Agency's decision to terminate his disability benefits.  (Doc. 11 at 290).  An ALJ conducted a hearing on June 17, 2021.  (Doc. 11 at 102).  The ALJ determined that Canoy was no longer disabled as of October 18, 2018.  (Doc. 11 at 112).  The ALJ found that Canoy still possessed the following medically determinable impairments: somatic disorder; obesity; gastroesophageal reflux disease (GERD); gastritis; bone metatarsalgia; and dry eye syndrome/meibomain gland dysfunction.  (Doc. 11 at 104).  The ALJ found, however, that none of these impairments considered singly or in combination, met or medically equaled the severity of an impairment in listings 12.04, 12.06, and 12.07 of 20 CFR Part 404, Subpart P, Appendix 1. (Doc. 11 at 104).  The ALJ found that Canoy no longer had manic behavior, paranoia, or delusions.  (Doc. 11 at 106).  The ALJ found that Canoy could track conversations and no longer had pressured speech.  (Doc. 11 at 106).  The ALJ found that Canoy had consistently normal mental status examinations.  (Doc. 11 at 104-105, 109).  The ALJ found that Canoy had normal cognitive function, good attention and reasonable concentration.  *Id.*  The ALJ noted that health care providers consistently described Canoy as calm, cooperative and pleasant. (Doc. 11 at 105).  The ALJ noted that Canoy's improvement with his mental

health stemmed from "consistent treatment," which included "medication and talk therapy." (Doc. 11 at 106). In assessing Canoy's improvement, the ALJ gave greatest weight to the opinion of consulting psychiatrist, Mark Mozer PhD, who examined Canoy on October 1, 2018. (Doc. 11 at 110, 827-830).

The ALJ assessed Canoy's RFC. The ALJ found that: 1) Canoy could perform simple tasks; 2) Canoy could maintain attention, concentration, persistence, and pace; 3) Canoy could tolerate interaction with others, but should not work in tandem with supervisors and coworkers, and should not work directly with the public; 4) Canoy could tolerate occasional changes; and 5) Canoy could not work at a fixed or fast production rate or pace, but Canoy could do goal oriented work. (Doc. 11 at 107-108).

Based on this RFC, the ALJ found that Canoy was not disabled. The ALJ determined that Canoy could perform his past relevant work as a merchandise marker, food server, and store laborer. (Doc. 11 at 111-112).

Canoy filed the present appeal on July 21, 2022. (Doc. 2). The matter has been fully briefed. (Docs. 13, 15, 18). The Court is prepared to rule.

## STANDARD OF REVIEW

The Court's review in this matter is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial

4

evidence or where the decision is based on legal error.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence has also been described as "more than a mere scintilla" but "less than a preponderance." *Desrosiers v. Sec. of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).

## BURDEN OF PROOF

Canoy's appeal challenges the ALJ's determination that his disability ended on October 18, 2018.  The Agency has established an eight-step process for determining whether an individual's entitlement to disability benefits has ended. *See* 20 C.F.R. §§ 404.1594(f)(1)-(8).  This eight-step continuing disability review process is similar to the five-step sequential evaluation process used to evaluate initial claims, with the exception that the eight-step process also focuses on medical improvement.  20 C.F.R. § 404.1594.  The eight-steps of inquiry are as follows:

> **At Step 1**.  The ALJ must determine whether the claimant is currently engaging in substantial gainful activity.  If the claimant is engaging in substantial gainful activity and any applicable trial work period has been completed, the claimant is no longer disabled.  20 C.F.R. § 404.1594(f)(1).

**At Step 2**.  The ALJ must determine whether the claimant has an impairment or combination of impairments which meets or equals the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.  If the claimant does, the claimant is still disabled.  20 C.F.R. § 404.1594(f)(2).

**At Step 3**.  The ALJ must determine whether medical improvement has occurred.  20 C.F.R. § 404.1594(f)(3).  Medical improvement is defined as any decrease in the medical severity of the claimant's impairments which were present at the time of the most recent favorable medical decision.  20 C.F.R. § 404.1594(b)(1).  The determination that there has been a decrease in medical severity must be based on improvements in symptoms, signs, and/or laboratory findings associated with the claimant's impairments.  20 C.F.R. § 404.1594(b)(1).  If medical improvement has occurred, the analysis proceeds to Step 4.  If no medical improvement has occurred, the analysis proceeds to Step 5.

**At Step 4**.  The ALJ must determine whether the medical improvement is related to the claimant's ability to work.  20 CFR § 404.1594(f)(4).  Medical improvement is related to the claimant's ability to work if it results in an increase in the claimant's residual functional capacity. 20 C.F.R. § 404.1594(b)(3).  If the medical improvement is related to the claimant's ability to work, the analysis proceeds to Step 6.

**At Step 5**.  The ALJ must determine whether an exception to medical improvement applies.  20 C.F.R. § 404.1594(f)(5).  There are two groups of exceptions.  These exceptions are set forth in 20 C.F.R. §§ 404.1594(d) and (e).  If one of the first group of exceptions applies, the analysis proceeds to Step 6.  If one of the second group of exceptions applies, the ALJ will find that the claimant's  disability has ended.  If none of the exceptions apply, the ALJ will find that the claimant is still disabled.

**At Step 6.**  The ALJ must determine whether the claimant has an impairment, or combination of impairments, that significantly limits the claimant's ability to do basic work activities.  20 C.F.R. § 404.1594(f)(6).   If the claimant's current impairments, in combination, do not significantly limit the claimant's ability to do basic work activities, the claimant is no longer disabled.  If the claimant's current impairments, in combination, do significantly limit the claimant's ability to do basic work activities, the analysis proceeds to Step 7.

**At Step 7.**  The ALJ must assess the claimant's residual functional capacity based on the current impairments and determine if the claimant can perform his or her past relevant work.  20 C.F.R. § 404.1594(f)(7).  If the claimant possesses the capacity to perform his or her past relevant work, the claimant's disability has ended.  If the claimant does not possess the ability to perform his or her past relevant work, the analysis proceeds to Step 8.

**At Step 8.**  The ALJ must determine whether other work exists that the claimant can perform, given his or her residual functional capacity, and considering his or her age, education, and past work experience.  20 C.F.R. § 404.1594(f)(8).  If the claimant can perform other work, the claimant is no longer disabled.  If the claimant cannot perform other work, the claimant is still disabled.  In order to support a finding that an individual is not disabled at Step 8, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's residual functional capacity, age, education and work experience.

## A.     ALJ's Determination in this Case

The ALJ followed the 8-step sequential evaluation process in evaluating

Canoy's claim.  At Step 1, the ALJ found that Canoy had not engaged in

substantial gainful activity since October 18, 2018.  (Doc. 11 at 104.)

At Step 2, the ALJ found that Canoy had the following medically

determinable impairments on and after October 18, 2018: somatic disorder,

obesity, gastroesophageal reflux disease (GERD), gastritis, bone metatarsalgia,

and dry eye syndrome/meibomian gland dysfunction.  (Doc. 11 at 104).

However, the ALJ found that Canoy did not have an impairment or combination

of impairments which met or medically equaled the severity of one of the listed

impairments in 20 C.F.R Part 404, Subpart P, Appendix 1.  (Doc. 11 at 104-106.)

At Step 3, the ALJ determined that a medical improvement had occurred

on October 18, 2018, as defined under 20 C.F.R §§ 404.1594(b)(1).  (Doc. 11 at

106).  The ALJ found that the severity of Canoy's impairments in June 2014 had

decreased by October 18, 2018.  Specifically, the ALJ found: 1) that Canoy no

longer experienced manic behavior; 2) that Canoy no longer described instances

of paranoia or delusions; 3) that Canoy no longer described difficulty tracking

conversations and no longer had pressured speech; 4) that Canoy had been

engaging in consistent medical treatment and Canoy had found benefit from

medications and talk therapy; and 5) that Canoy had consistently maintained part time employment with the same employer for six years, albeit very part time. (Doc. 11 at 106).

At Step 4, the ALJ found that Canoy's medical improvement was related to his ability to work because, by October 18, 2018, the impairments that Canoy possessed in June 2014, no longer met or medically equaled the same listings that were met in June 2014. (Doc. 11 at 107). The ALJ then moved to Step 6.

At Step 6, the ALJ found that Canoy continued to have a severe impairment on and after October 18, 2018. (Doc. 11 at 107.) The ALJ found that Canoy's somatic disorder was a severe impairment given that it caused more than a minimal limitation in Canoy's ability to perform basic work activities. (Doc. 11 at 107). The ALJ found that none of Canoy's other medically determinable impairments (obesity, gastroesophageal reflux disease (GERD), gastritis, bone metatarsalgia, and dry eye syndrome/meibomian gland dysfunction) qualified as a severe impairment, as they did not cause a work-related limitation that lasted or was expected to last 12 months or more. (Doc. 11 at 107).

At Step 7, the ALJ assessed Canoy's residual functional capacity based upon the impairments that Canoy possessed on and after October 18, 2018. (Doc.

11 at 107).  The ALJ determined that Canoy possessed the residual functional capacity to understand, remember, and carry out simple tasks; maintain attention, concentration, persistence, and pace for simple tasks for an 8-hour workday and a 40-hour work week.  (Doc. 11 at 107).  The ALJ determined that Canoy can tolerate occasional interaction with supervisors, coworkers and the public, but Canoy should not work in tandem with supervisors and coworkers, and Canoy should not work directly with the public as part of his job duties.  (Doc. 11 at 107).  The ALJ found that Canoy can tolerate ususal simple work situations, and occasional changes in routine work settings, but Canoy cannot work at a fixed or fast production rate or pace.  *Id.*  The ALJ found that Canoy can do goal oriented work.  *Id.*  The ALJ found that Canoy would need normal work breaks every two hours, with two breaks lasting at least 10 minutes, and one break lasting at least 30 minutes.  (Doc. 11 at 107-108).

At Step 8, the ALJ determined that Canoy was capable of performing his past relevant work as a merchandise marker, food server and store laborer on and after October 18, 2018.  (Doc. 11 at 111-112).  Based on these findings, the ALJ determined that Canoy's disability ended on October 18, 2018, and that Canoy has not become disabled again since October 18, 2018.  (Doc. 11 at 112).

10

## CONTENTIONS

### A.        Canoy's Contentions

Canoy argues that the Court should reverse the Commissioner's decision and remand the case for further proceedings or award benefits. (Doc. 13 at 17-18, 35).  Canoy argues that the Commissioner's decision should be reversed for the following reasons:

1.      The ALJ's finding that his manic behavior had improved between June 6, 2014 and October 18, 2018, was not supported by substantial evidence.  (Doc. 13 at 18, 24-27; Doc. 18 at 2-4);

2.      The ALJ's residual functional capacity assessment was deficient because it failed to address the neuropsychological evaluation that Dr. Mark Johnson conducted on December 21, 2021; and

3.      The ALJ's residual functional capacity assessment was deficient because it failed to address whether the frequency and duration of his medical treatments would prevent him from working, as required under SSR 96-8p.  (Doc. 13 at 18, 27-30; Doc. 18 at 5-13).

### B.        Commissioner's Contentions

The Commissioner argues that the Court should affirm the ALJ's decision because the ALJ's decision was based on substantial evidence and was

free of legal error.

## **DISCUSSION**

### A.   **Evidence of Medical Improvement**

The ALJ determined that Canoy's manic behavior had improved on or about October 18, 2018. (Doc. 11 at 106). Canoy argues that the ALJ erred when she made this determination because the ALJ's determination was not supported by substantial evidence. (Doc. 13 at 24).

When assessing medical improvement, the ALJ must compare the current severity of the claimant's impairments with the severity of the claimant's impairments on the date of the comparison point decision (in this case — June 6, 2014). 20 C.F.R. § 404.1579(b)(5). Improvement is "any decrease in the medical severity" of the impairments. 20 C.F.R. § 404.1579(c)(1). A finding of medical improvement "is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with [the claimant's] impairment(s)." *Id.* The improvement must be related to the claimant's ability to work. 20 C.F.R. § 404.1579(c)(2).

A "manic episode" is characterized by "periods of persistent and significant elevated, expansive, or irritable mood, and associated symptoms

12

including decreased sleep, psychomotor speeding, racing thoughts, flight of

ideas, grandiosity, and poor judgment leading to behavior that may later be

regretted." Stedman's Medical Dictionary, at *Manic Episode* (Nov. 2014),

*available on* Westlaw Edge ("299020 manic episode").

The medical record shows that Canoy experienced manic behavior prior

to June 6, 2014. In January 2011, Canoy had "racing or accelerated thoughts."

(Doc. 11 at 630). In February 2011, Canoy seemed "less manic," but Canoy still

complained of "fluctuating energy and anxiety levels." (Doc. 11 at 595).

Canoy's psychiatrist observed that Canoy was "a little euphoric." (Doc. 11 at

728). Canoy reported that his mood "ha[d] been variable . . . up and down."

(Doc. 11 at 599). In June 2011, Canoy's "thought[s] w[ere] pressured and

[Canoy] seemed to have a flight of ideas." (Doc. 11 at 722). In August 2011,

Canoy's counselor thought that Canoy "did not look to be manic," but Canoy's

psychiatrist noted that Canoy had racing thoughts. (Doc. 11 at 613, 714). In

October 2011, Canoy vacillated between being "peaceful, serene and calm" and

sullen, depressed, and irritable. (Doc. 11 at 609-611). Canoy also complained of

"feeling more anxious lately." (Doc. 11 at 611). In September 2012, Canoy's

psychiatrist noted that Canoy "might be a little hypomanic." (Doc. 11 at 675).

In December 2012, Canoy was "[h]aving trouble finishing his thoughts" and

Canoy's "thoughts [were] scattered." (Doc. 11 at 683-84, 745). In June 3013, Canoy was reported as being "a little hyped." (Doc. 11 at 674). In December 2013, Canoy reported that he was doing "horrible," was "feeling a lot of anxiety, was feeling apathetic, and "hopeless." (Doc. 11 at 665). Canoy said, however, that he was "not usually like this and that his feelings in December 2013, occur about "once or twice a year." (Doc. 11 at 666). Canoy's medical records show that Canoy also struggled with sleep problems during the period from 2011 to 2013. See *e.g.*, Doc. 11 at 599, 602, 607, 609, 612, 625, 699, 720.

In June 2014, Dr. Peg Herman, PhD, summarized Canoy's medical record. (Doc. 11 at 772). Dr. Herman did not use the words "manic" or "mania," but Dr. Herman's description of Canoy's mental symptoms described manic behavior. Dr. Herman noted that Canoy "struggles with depressive symptoms and increased energy points." (Doc. 11 at 772). Dr. Herman noted that Canoy complained of "sleep problems" and "racing thoughts." (Doc. 11 at 772).

Dr. Herman's opinions were summarized in the Agency's determination on June 6, 2014. (Doc. 11 at 254). The Agency's determination on June 6, 2014, explicitly noted that Canoy has "struggled with manic episodes," "delusional thoughts," "sleep problems," and "racing thoughts." (Doc. 11 at 254).

14

The ALJ's determination that Canoy's manic behavior had improved on and after October 18, 2018, is supported by substantial evidence.  The ALJ noted that the record contained no evidence of manic behavior after October 18, 2018. Specifically, the ALJ noted that Canoy no longer described instances of paranoia or delusions.  (Doc. 11 at 106, 780, 832, 841, 859, 1019, 1069).  Canoy no longer described problems with pressured speech.  After October 18, 2018, Canoy no longer described difficulty tracking conversations.  (Doc. 11 at 106). Canoy's speech was "fluent" and "clear," and Canoy demonstrated a linear, logical, organized and goal directed thought process.  (Doc. 11 at 105, 832-33, 937, 1031, 1062, 1069, 1084, 1213, 1577).  Canoy concedes that he has had no manic symptoms since October 18, 2018.  (Doc. 13 at 19).

The ALJ's determination that Canoy's manic behavior has improved since October 18, 2018, is supported by substantial evidence.  No error occurred.

### B.       Dr. Johnson's Neuropsychological Evaluation

Dr. Mark Johnson PhD conducted a neuropsychological evaluation of Canoy on December 21, 2021.  (Doc. 11 at 49-53). The evaluation revealed that Canoy may "suffer from bipolar1 disorder, anxiety disorder, [and] somatic symptom disorder" as well as "significant ADHD spectrum concerns."  (Doc. 11 at 52).  Canoy argues that the ALJ erred when the ALJ failed to consider

Dr. Johnson's findings when the ALJ assessed his residual functional capacity. (Doc. 13 at 21-22).  Dr. Johnson conducted his neuropsychological evaluation of Canoy approximately 6 months after the ALJ issued her decision on July 27, 2021.  (Doc. 11 at 49, 112).  The ALJ cannot consider a neuropsychological evaluation that did not exist when the ALJ issued her decision.  No error occurred.

### C.        Frequency and Duration of Medical Treatments

Canoy argues that the ALJ's RFC assessment was defective because the ALJ failed to consider and discuss the effects of his medical treatment, specifically the frequency and duration of his medical treatment between October 18, 2018, and the date of the ALJ's decision.  Canoy relies on Social Security Ruling (SSR) 96-8p.[2]

SSR 96-8p requires that the effects of treatment be incorporated into an RFC assessment when a plaintiff has presented evidence showing that his medical treatment may potentially inhibit his ability to work.  The effects of treatment include: the frequency of treatment, the duration of treatment, and the disruption to routine.  SSR 96-8p, 1996 WL 374184, *5 (July 2, 1996).  The

---

[2] Social Security Rulings do not carry the same force and effect as a statute or regulation, but they are binding on the Social Security Administration.  20 C.F.R. § 402.35(b)(1); *Bray v. Commissioner of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009).

ALJ's failure to consider the effects of treatment may constitute reversible error. See *Childs v. Kijakazi*, 2022 WL 325913, *8 (D. Mont. Feb. 3, 2022); *Edmunds v. Kijakazi*, 2021 WL 4452762, *6 (D. Mont. Sept. 29, 2021).

Here, Canoy argues that he had 11 medical visits in the last three months of 2018 for average of 3.66 visits per month, 27 medical visits in 2019 for an average of 2.25 visits per month, 42 medical visits in 2020 for an average of 3.5 visits per month, and 36 medical visits in 2021 for an average of 3 visits per month. (Doc. 13 at 28-29).

The ALJ discussed Canoy's various mental and physical impairments in her decision (Doc. 11 at 104-111), but the ALJ did not consider whether Canoy's medical treatment could potentially interfere with his ability to work. Specifically, the ALJ failed to note, weigh, or otherwise consider the frequency and duration of Canoy's medical treatment. The ALJ should have considered whether Canoy could schedule his medical treatment outside of work hours or otherwise group his medical appointments in a way that would minimize his time away from work. *Bourcier v. Saul*, 856 Fed. Appx. 687, 691 (9th Cir. 2021); *Childs*, 2022 WL 325913 at *8. The ALJ should have also considered whether the frequency of Canoy's medical appointments would likely continue or subside over time. *Id*. The ALJ also failed to ask the vocational expert to describe the

17

maximum amount of time that an individual can miss from work in a month and still sustain full-time employment.

The prejudice of the ALJ's oversight is demonstrated in the vocational expert's response to the hypothetical questions presented by the ALJ. The vocational expert testified that if an individual was "off task more than ten percent of the workday in addition to normal work breaks," that person would not be able to perform full-time work. (Doc. 11 at 157). The amount of time that Canoy may need for medical care could potentially exceed this threshold. The ALJ therefore erred when she failed to consider and discuss Canoy's treatment needs as part of the RFC assessment.

## **ORDER**

1.     The Commissioner's decision to terminate Canoy's disability benefits is REVERSED and REMANDED for further administrative proceedings in accordance with this Memorandum and Order.

2.     The Clerk is directed to enter judgment accordingly.

DATED this 3rd day of November, 2023.


John Johnston
United States Magistrate Judge

18